UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| DAVID L. GROVES,<br><br>                Plaintiff,<br><br>vs.<br><br>PAULA C. DAFFIN, and<br>ROBERT C. DAFFIN,<br><br>                Defendants. | Civil Action No.: 8:13-19-BHH<br><br>**FINAL JUDGMENT** |

This matter came before the Court for a bench trial on Thursday, January 14, 2016 at 9:30 a.m. Robert W. Hughes, Jr. and William E. Fields represented David Groves ("Plaintiff"). William B. Ney and Thomas J. Goodwyn represented Paula C. Daffin and Robert C. Daffin ("Defendants"). The Court hereby makes the following Findings of Fact and Conclusions of Law.

## SUMMARY

Plaintiff seeks cancellation of a quitclaim deed transferring Defendant Robert Daffin's interest in a residence to his wife, Defendant Paula Daffin. Plaintiff asserts that this conveyance was fraudulent in violation of the Statute of Elizabeth, S.C. Code § 27-23-10. It is undisputed that the transfer in question occurred after Plaintiff filed an action against Defendant Robert Daffin, but several years before Plaintiff ultimately obtained a judgment against Daffin. This places Plaintiff in the position of a "subsequent creditor" and requires proof that (1) the conveyance was voluntary, that is, without consideration, and (2) made with a view to future indebtedness or an actual fraudulent intent on the part of the grantor if the conveyance is to be set aside.

1

## **FINDINGS OF FACT**

Plaintiff and Defendant Robert Daffin are former business partners who owned an entity named Stone Mountain Productions, Inc. ("SMP"). (Tr. 18:2-8.) SMP produced laser light shows. (Tr. 17:16-19.) In early 2004, Defendant Robert Daffin, Plaintiff, and SMP entered into an agreement whereby SMP agreed to buy Plaintiff's interest in SMP. (Tr. 17:23-18:8.) SMP agreed to pay Plaintiff $1,400,000 for his interest. (Tr. 18:9-15.) Plaintiff received a $500,000 down-payment from SMP. (*Id.*) Additionally, SMP issued a promissory note (the "Note") to Plaintiff in the amount of $900,000. (*Id.*)

Under the Note, SMP was obligated to pay Plaintiff approximately $13,000 per month for seventy-two months. (*Id.*) After making several monthly payments, SMP defaulted on the Note. (Tr. 18:23-19:3.) In June 2005, Plaintiff sued SMP for breach of the Note. (Tr. 19:4-6, 29:18-24.) In June 2006, Plaintiff obtained a $900,000 judgment against SMP. (Tr. 24:13-16.)

In July 2007, Plaintiff filed a lawsuit in the Superior Court of Dekalb County, Georgia against Defendant Robert Daffin and others seeking damages of $786,000 and alleging that Daffin and others fraudulently transferred the assets of SMP out of SMP. (Tr. 24:19-24; Def. Ex. 1, 2007 Complaint.) On September 5, 2007, Defendant Robert Daffin sold and released his one-half (1/2) undivided interest in the property located at 115 North Wynward Pointe Drive, Salem, SC 29676 ("the Property"), located on lot 116 of the Wynward Pointe Subdivision, more particularly described as:

> ALL that certain piece, parcel or tract of land, together with any and all improvements located thereon, lying and being situate in the State of South Carolina, County of Oconee, being shown and designated as LOT 116 of PHASE II, WYNWARD POINTE SUBDIVISION, as shown on a Plat thereof recorded in Plat Book A-706, at Pages 5, 6, and 7, records of the Register of Deeds Office for Oconee County, Walhalla, South Carolina;

> having the metes and bounds, courses and distances as appear upon said Plat, being incorporated herewith and made part hereof by reference thereto

to his wife, Defendant Paula Daffin, for and in consideration of five dollars ($5.00) and love and affection. (Plf. Ex. 2, Deed.) Defendants did not actually exchange five dollars during the transfer; that number was simply chosen by the attorney who drafted the transfer documents (Tr. 45:22-24.) Ultimately, in July 2012, Plaintiff obtained a judgment against Defendant Robert Daffin in the amount of $308,000 plus legal interest from March 2005 until paid, on the final arbitration award pertaining to the 2007 lawsuit. (Tr. 19:24-20:8; Plf. Ex. 1, Judgment; Def. Ex. 3, Arbitrator's Award.)

In January 2007, as part of an application for a home equity line of credit, Defendants indicated that the then present value of the Property was $1,500,000. (Tr. 44:5-9, 45:25-46:3; Plf. Ex. 3, Bank Records.) At that time, Defendants also indicated that the balance owed on the Property's mortgage was $283,060.08. (Tr. 44:10-12, 46:4-6; Pl. Ex. 3.) No evidence was presented of any additional encumbrance on the Property in 2007. No evidence was presented of any different valuation of the Property in 2007. In the absence of evidence to the contrary, and given that Defendants themselves were the source of the relevant figures, the Court adopts $1,500,000 as the approximate market value of the Property at the time of the conveyance in question. Subtracting the only known encumbrance on the Property, the Court finds that Defendants held equity in the Property of approximately $1,220,000 at the time of the conveyance.

Further documentation in the form of renewal applications for the home equity line of credit reflects that Defendants have more recently indicated the market value of

the Property as $940,000 (March 2015), $950,000 (February 2014), and $900,000 (January 2013), and the corresponding amount of the outstanding mortgage as $235,129 (2015), $241,800 (2014), and $251,445 (2013). (Pl. Ex. 3.) No evidence was presented that the fair market value of Defendant Robert Daffin's one-half (1/2) undivided interest in the Property, after subtracting relevant encumbrances, ever approached $5.00, whether in 2007 or in the time period since. The home equity line of credit documentation also reflects that in the time period since July 2012 Defendant Robert Daffin has repeatedly represented to the lender that he has no outstanding judgments against him. (Plf. Ex. 3; T. 45:6-17.)

Defendants testified that they had a legitimate business purpose for the conveyance. Specifically, they testified that sole ownership of the property by Defendant Paula Daffin would facilitate a new business idea they were formulating in September 2007 to convert an existing real estate development LLC ("KTMG"), in which Defendant Robert Daffin was a member, into a "minority-owned business" or "woman-owned company." (Tr. 37:14-38:9, 55:11-24.) Purportedly, Defendant Paula Daffin's sole ownership of the Property would have allowed her to obtain loans and win favorable government real estate development contracts for KTMG. (Tr. 36:24-37:7, 38:10-12, 55:11-22.) To bolster this assertion, Defendants point to the fact that Paula Daffin was made a member of KTMG. (Tr. 40:20-25, 55:23-24.) Defendants further testified that Paula Daffin was unaware of the lawsuit pending against Robert Daffin when the Property was conveyed. (Tr. 38:22-39:2, 55:4-10.)

The Court does not, however, accept the purpose of the conveyance as asserted by Defendants. First, KTMG remained a male-owned company for two and a half years

4

after the conveyance, and Paula Daffin was not made a member until 2010. (Tr. 47:6-11, 47:14-48:7, 57:22-58:10, 61:10-17; Def. Ex. 9, LLC Members Statement). Second, Paula Daffin never did any land development with KTMG, the Property was never used as collateral to finance any KTMG business, and Defendants produced no evidence, whether documentary or otherwise, showing that Paula Daffin was actually in the land development business in any meaningful way. (Tr. 48:8-23, 58:22-59:23.) The Court remains wholly unconvinced by the self-serving testimony of Defendants as to the alleged business purpose of the conveyance.

## **CONCLUSIONS OF LAW**

In July 2007, Plaintiff filed a lawsuit against Defendant Robert Daffin and others. In September 2007, Defendant Robert Daffin transferred his interest in the Property identified as 115 North Wynward Pointe Drive, Salem, SC 29676 to Defendant Paula Daffin for $5.00 and love and affection. The trial court in Georgia entered judgment of $308,000 against Robert Daffin in July 2012. Therefore, Plaintiff became a judgment creditor *after* the conveyance of the Property in September 2007, placing him in the position of a "subsequent creditor" as more fully explained below.

Section 27-23-10 of the South Carolina Code, commonly referred to as the Statute of Elizabeth, provides in pertinent part:

> Every . . . conveyance of lands, tenements or hereditaments, goods and chattels or any of them . . . by writing or otherwise . . . which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken . . . to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

5

S.C. Code § 27-23-10. The analysis for setting aside a conveyance of a "subsequent creditor", one who becomes a creditor subsequent to the allegedly fraudulent conveyance, differs from that of existing creditors. Under South Carolina law, "subsequent creditors may have conveyances set aside when (1) the conveyance was voluntary, that is, without consideration, and (2) it was made with a view to future indebtedness or with an actual fraudulent intent on the part of the grantor to defraud creditors." *In re J.R. Deans,* 249 B.R. 121, 130-31 (Bankr. D.S.C. 2000) (citing *Mathis v. Burton*, 460 S.E.2d 406, 408 (S.C. Ct. App. 1995)) (internal quotation marks and alterations omitted).

On the first prong of the subsequent creditor analysis under the Statute of Elizabeth, the Court finds that the conveyance of the Property was "voluntary," that is it was made without consideration. Nominal consideration of five dollars ($5.00) for the conveyance of an undivided one-half interest in a $1,500,000 home, based on the facts established, is the equivalent of a voluntary transfer. *See In re Haddock*, 246 B.R. 810, 815 (Bankr. D.S.C. 2000). In prior briefing on this issue, Defendants correctly raised the point that there was no mortgage on the property at issue in *In re Haddock*, and attempted to distinguish their own conveyance on grounds that the 115 North Wynward Pointe Property was "substantially" encumbered. As noted above, the Court finds that the equity possessed by Defendants in the Property at the time of the transfer was more than a million dollars. Given such substantial equity in Defendants' home, a transfer involving five dollars ($5.00) and love and affection is *without* consideration as a matter of law. The conveyance was made "voluntarily" and satisfies the first requirement of the subsequent creditor fraudulent conveyance analysis under the Statute of Elizabeth.

Turning to the second prong of the subsequent creditor analysis, the Court finds that the conveyance of Defendant Robert Daffin's interest in in the Property was made with a view to Robert Daffin's future indebtedness, and not for a legitimate business purpose. At the time of the conveyance in September 2007, Defendant Robert Daffin knew of Plaintiffs' July 2007 lawsuit seeking nearly $800,000 against Daffin and others for improper disposal of the assets of SMP, which hindered Plaintiff's ability to collect on his prior judgment against SMP. Thus, the Court finds that Defendant Robert Daffin knew Plaintiff was a potential creditor at the time of the conveyance. Assuming it is true that Defendant Paula Daffin had no knowledge of the July 2007 lawsuit, her ignorance is irrelevant because Defendant Robert Daffin's purpose for the transfer of his interest in the Property remains unchanged. The Court is convinced that Defendant Robert Daffin made the conveyance in September 2007 with Plaintiff's July 2007 suit in mind. Defendant Paula Daffin's presumed ignorance of the lawsuit does nothing to negate any scienter attributable to Defendant Robert Daffin to insulate his assets from potential future indebtedness to Plaintiff.

Even if the Court accepted the Defendants' stated reason for transferring the real estate interest, which it does not, the woman-owned business concept used by Defendants to bolster their assertion was unsubstantiated and too far attenuated from the subject conveyance to aid in the explanation. With little probing, the claimed reason of providing Defendant Paula Daffin additional equity in their home to obtain loans in support of public real estate development projects was revealed as a red herring. Paula Daffin was not even made a member of KTMG until 2010. Beyond vague references to "looking at properties" and "talking about" projects, Mrs. Daffin could not name a single

7

investment or transaction in which the "woman-owned company" engaged. The Court finds that the Defendants' testimony regarding the purported reason for the conveyance was self-serving and incredible. In sum, the conveyance was not made for a legitimate business purpose, and the business purpose the Defendants propose is at best a *post hoc* justification for the transfer. The second requirement of the subsequent creditor fraudulent conveyance analysis under the Statute of Elizabeth is satisfied.

Because Plaintiff has successfully met the requirements of Section 27-23-10 of the South Carolina Code, the Court finds the conveyance at issue to be void. The Oconee County South Carolina Register of Deeds Office is ORDERED and DIRECTED to cancel of record the deed found at Book 1610, Pg. 152-154 and to cross index this Order to the following instruments on the condition that applicable statutory recording fees and costs are paid:

- The Deed from Robert Daffin to Paula Daffin found at Deed Book 1610, Pg. 152-154.
- The Deed from Crescent Resources, Inc., dated to Robert Daffin and Paula Daffin dated December 14, 1999 and recorded in Deed Book 1065, Pg. 323.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

February 17, 2016
Greenville, South Carolina

| | |
|---|---|
| AFTER RECORDING RETURN TO: | PLEASE CROSS-REFERENCE: |
| Robert W. Hughes & Associates, P.C.<br>390 W. Crogan St., Suite 230<br>Lawrenceville, GA  30046 | Deed at Book 1610 Pg. 152-154 |

9